UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN JOSE DIVISION

| | |
|---|---|
| FLIPBOARD, INC., <br>     Plaintiff, <br> v. <br> KALLIOPE AMORPHOUS, <br>     Defendant. | Case No. 15-cv-03255-BLF <br><br> **ORDER DENYING DEFENDANT'S MOTION TO DISMISS** <br><br> [Re: ECF 17] |

Before the Court is Defendant's Motion to Dismiss for lack of personal jurisdiction. ECF 17. Defendant, a *pro se* Rhode Island resident, argues that the Court lacks jurisdiction over her, and that asserting such jurisdiction would offend traditional notions of fair play and substantial justice. *Id.* Plaintiff responds that Defendant consented to personal jurisdiction in this forum and that the Court additionally has specific jurisdiction over Defendant as a result of her contacts with California. ECF 27. For the reasons stated below, the Court DENIES Defendant's motion to dismiss.

**I.    BACKGROUND**

Plaintiff Flipboard, Inc. alleges that its principal place of business is located in Palo Alto, California. Compl., ECF 1 ¶ 1. Plaintiff describes itself as an online service that "allows users to view a variety of online content, including images . . . in interactive magazine-style layouts and, if they choose, share their personalized collections with others." *Id.* ¶ 5. Plaintiff alleges that it stores some of the content it makes accessible pursuant to a license, *id.* ¶ 6, or the Digital Millennium Copyright Act ("DMCA"), *id.* ¶ 7. Plaintiff alleges that the remaining content is served from other online locations, including websites like Flickr, Tumblr, and Bored Panda, through, among other things, application protocol interfaces ("APIs"). *Id.* ¶ 8.

Defendant Kalliope Amorphous is a visual artist residing in Rhode Island. *Id.* ¶ 2; Amorphous Mot. Decl., ECF 17-1 ¶ 6. She has posted her photographs on various online services, including Bored Panda, Flickr, and Tumblr. Compl. ¶ 2; Amorphous Mot. Decl. ¶ 5.

Plaintiff alleges that, on June 5, 2015, Plaintiff received a letter from Barbara Hoffman, New York counsel for Defendant[1] ("Defendant's New York Counsel"), at its Palo Alto office. *Id.* ¶ 10; Willen Decl., ECF 28 ¶ 2. The letter was addressed to Plaintiff's General Counsel in Palo Alto and described Plaintiff as a company "with its principal place of business in Palo Alto, California." Willen Decl. ¶ 2 and Exh. A at 1.

The letter claimed that Plaintiff was infringing Defendant's copyright on images she had posted on Bored Panda. Compl. ¶ 10. In the letter, Defendant's New York Counsel stated, "[I]t would be simple enough for Ms. Amorphous, my client, to file suit against [Plaintiff] for copyright infringement and seek the maximum statutory damages." *Id.* ¶ 11; Willen Decl. Exh. A at 1. The letter claimed that Defendant "is entitled to three million dollars." *Id.*

On June 10, 2015, an attorney in New York representing Plaintiff responded. Compl. ¶ 12. Over the next several days, Plaintiff's New York attorney and Defendant's New York Counsel exchanged four additional letters or emails and one call, in which Defendant's New York Counsel additionally accused Plaintiff of improperly taking Defendant's images from Flickr and Tumblr and continued to note the possibility of litigation. *Id.* ¶¶ 13-17.

On June 24, 2015, Defendant's New York Counsel wrote Plaintiff's New York attorney that she was "willing to settle for one million dollars." *Id.* ¶ 18. Plaintiff's New York attorney rejected the offer on June 30, 2015, and asked for additional information regarding the copyrighted works and registrations Defendant claimed Plaintiff was infringing. *Id.* ¶ 19. On July 8, Defendant's New York Counsel sent information about her client's works on Flickr and Tumblr, "along with some screenshots showing the ways that Defendant herself had used those works in connection with the Flipboard application." *Id.* ¶ 20. Plaintiff alleges that Defendant provided no

---

[1] Ms. Hoffman is "a lawyer who has represented [Defendant] for several years . . . in New York City." Amorphous Mot. Decl. ¶ 7. Ms. Hoffman was "unable with due diligence to find a lawyer who could timely and competently represent [Defendant] at a price she could afford in California." Hoffman Mot. Decl., ECF 17-5 ¶ 7. As a result, Defendant is proceeding *pro se* in this action.

evidence of any other Flipboard user accessing, incorporating, copying, or sharing those works through its services. *Id.* On July 13, 2015, the attorneys spoke again and Defendant's New York Counsel allegedly repeated her one million dollar settlement offer while noting the possibility of court action. *Id.* ¶ 21.

Later that day, Plaintiff filed this action for declaratory judgment of noninfringement pursuant to the Declaratory Judgment Act, 28 U.S.C. §§ 2201-2202, the Copyright Act of 1976, 17 U.S.C. §§ 101 e*t seq.*, the Digital Millennium Copyright Act ("DMCA"), 17 U.S.C. § 1202, and the Lanham Act, 15 U.S.C. § 1051 *et seq.*

On July 27, 2015, Defendant, represented by her New York Counsel, filed an action for direct and contributory copyright infringement and violation of the DMCA in the Southern District of New York ("New York Case"). *See* Amorphous Mot. Decl. Exh. A, ECF 17-2; *see also Amorphous v. Flipboard, Inc.,* No. 1:15-cv-05802-KPF.

On September 21, 2015, Defendant filed the instant motion to dismiss for lack of personal jurisdiction.[2] Plaintiff opposed on October 15, 2015 and Defendant replied on October 21, 2015, ECF 31. The Court heard oral argument on this motion on November 12, 2015, with Defendant appearing by phone. On October 16, 2015, Plaintiff moved to transfer the New York Case here. A decision on that motion has not yet been issued.

## II.   LEGAL STANDARD

Federal Rule of Civil Procedure 12(b)(2) authorizes a defendant to seek dismissal of an action for lack of personal jurisdiction. When a defendant challenges a court's personal jurisdiction, the plaintiff bears the burden of establishing that jurisdiction over the defendant is proper. *Ranza v. Nike, Inc.,* 793 F.3d 1059, 1068 (9th Cir. 2015).

---

[2] Defendant's motion also includes a section entitled "Failure to State a Claim." Mot. at 13. However, neither in that section nor anywhere else in her Motion or Notice of Motion does Defendant ask the Court to dismiss this action for failure to state a claim. To the extent that the section can be construed as moving for dismissal for failure to state a claim, it is not supported by any facts or arguments. Rather, Defendant incorporates by reference legal arguments included in the declaration of her New York Counsel. *Id.*; Hoffman Mot. Decl., ¶¶ 17, 24.

Pursuant to Local Civil Rule 7-5(b), the Court STRIKES all legal argument included in the Hoffman Declaration in support of the Motion to Dismiss. In addition, the Court DENIES Defendant's motion to dismiss to the extent that it is based on failure to state a claim.

"Where, as here, the defendant's motion is based on written materials rather than an evidentiary hearing, the plaintiff need only make a prima facie showing of jurisdictional facts to withstand the motion to dismiss." *Ranza*, 793 F.3d at 1068 (internal quotation marks and citation omitted). The plaintiff may meet that burden by submitting affidavits and discovery materials. *Doe v. Unocal Corp.*, 248 F.3d 915, 922 (9th Cir. 2001). A "plaintiff may not simply rest on the bare allegations of the complaint. But uncontroverted allegations must be taken as true, and conflicts between parties over statements contained in affidavits must be resolved in the plaintiff's favor." *Ranza*, 793 F.3d at 1068.

Where no applicable federal statute governs personal jurisdiction, "the law of the state in which the district court sits applies." *Harris Rutsky & Co. Ins. Servs., Inc. v. Bell & Clements Ltd.*, 328 F.3d 1122, 1129 (9th Cir. 2003). "California's long-arm statute allows courts to exercise personal jurisdiction over defendants to the extent permitted by the Due Process Clause of the United States Constitution." *Id.* A court may exercise personal jurisdiction "consistent with due process only if [the defendant] has 'certain minimum contacts' with the relevant forum such that the maintenance of the suit does not offend 'traditional notions of fair play and substantial justice.'" *Yahoo! Inc. v. La Ligue Contre Le Racisme Et L'Antisemitisme*, 433 F.3d 1199, 1205 (9th Cir. 2006) (quoting *International Shoe Co. v. Washington*, 326 U.S. 310, 316 (1945)).

"The strength of contacts required depends on which of the two categories of personal jurisdiction a litigant invokes: specific jurisdiction or general jurisdiction." *Ranza*, 793 F.3d at 1068. Here, Plaintiff asserts only specific jurisdiction. Such jurisdiction can exist when the defendant's contacts with the forum state are limited if the plaintiff's claims arise out of or relate to those contacts. *Daimler AG v. Bauman*, 134 S. Ct. 746, 754 (2014).

### III. DISCUSSION

#### A. Consent

A court may exercise personal jurisdiction over a defendant based on consent. "[I]t is settled . . . that parties to a contract may agree in advance to submit to the jurisdiction of a given court." *National Equip. Rental, Ltd. v. Szukhent,* 375 U.S. 311, 316 (1964). Where the defendant has consented to California jurisdiction, the "court need not embark on a 'minimum contacts'

4

analysis." *Craigslist, Inc. v. Kerbel,* No. C–11–3309 EMC, 2012 WL 3166798 at *6 (N.D. Cal. Aug. 2, 2012) (quoting *Zenger-Miller, Inc. v. Training Team, GmbH*, 757 F. Supp. 1062, 1069 (N.D. Cal. 1991).

Plaintiff argues that Defendant's consent to Flipboard's terms of use ("TOU"), which include a California forum selection clause, suffices to establish the Court's personal jurisdiction over her. Opp. at 9; Creemer Decl., ECF 29 ¶¶ 13, 14. The TOU state, "we each agree that any [non-arbitrable] claims shall be litigated exclusively in a state court located in Santa Clara County, California, and you consent to personal jurisdiction in those courts." Creemer Decl. Exh. A at 5.

Courts have applied the consent principle to forum selection clauses in website terms of use. *Id.* "Forum selection clauses [in TOUs] are presumptively valid." *Kerbel*, 2012 WL 3166798 at *6 (citing *Craigslist, Inc. v. Naturemarket, Inc.*, 694 F. Supp. 2d 1039, 1052 (N.D. Cal. 2010)).

Defendant admits that she "adopt[ed] the role of 'user'" on Plaintiff's service. Amorphous Reply Decl., ECF 32 ¶ 15. And she has exhibited a high level of familiarity with website terms of service and use. Defendant "relied on the protection of the . . . TOS of Bored Panda, Flickr, and Tumblr," Exh. A ¶9, and asserts personal knowledge of the terms for the Flickr and Tumblr APIs, Amorphous Mot. Decl. ¶¶ 20-27. Defendant asserts that she chose Flickr and Tumblr as her "primary photo hosting services due to [their] strict copyright policies." Reply at 7.

In the face of this consent, "the only issue for the court is whether the contracts are unfair or unreasonable." *Kerbel*, 2012 WL 3166798 at *6. "The party disputing the validity of a forum selection clause bears the burden of proving the clause is unenforceable." *Naturemarket,* 694 F. Supp. 2d at 1052.

Defendant first argues that enforcing Plaintiff's forum selection clause here would be "patently unreasonable" because she "had to access Flipboard" in order to document the alleged infringement. Reply at 18-19. This left her with "an overreaching and deceptive Catch 22": she could either have proof of Plaintiff's infringement but be subject to suit in California, or she could reject the forum selection clause but deprive herself of the proof she needed to bring the New York Case. *Id.* at 18-19.

Plaintiff responds that Defendant joined Flipboard and agreed to its TOU not to document

5

infringement, but to manufacture it. Opp. at 10; Creemer Decl. ¶ 13. Specifically, Plaintiff argues that, to establish Plaintiff's secondary liability for copyright infringement, Defendant needed to show infringement by a third party but had no proof that any Flipboard user had accessed her work; to rectify this, Plaintiff contends, Defendant "used her own account on Flipboard to manufacture the supposed 'infringements' for which she seeks to hold Flipboard secondarily liable." Opp. at 9-10.

To the extent that the parties' affidavits have created a factual dispute,[3] the Court must resolve the disagreement in Plaintiff's favor for the purposes of this motion. *See Bancroft & Masters, Inc. v. Augusta Nat. Inc.*, 223 F.3d 1082, 1087 (9th Cir. 2000). Thus, the Court assumes that Defendant joined Plaintiff's service in order to manufacture at least some of the alleged infringement and finds Defendant's catch-22 argument unavailing.

Defendant next contends that enforcing the forum selection here would be unfair or unreasonable as it would "effectively depriv[e] her of her day in court." But Defendant is, in fact, having her day in court, albeit as a defendant and in California.

Finally, Defendant argues that enforcing the forum selection clause would be unreasonable because litigating here would impose a "substantial and impossible" financial burden on her and would "wrest [her] from her long-time attorney in New York." Reply at 19-20. But, "[w]ith the advances in transportation and telecommunications and the increasing interstate practice of law, any burden of litigation in a forum other than one's residence is substantially less than in days past." *CollegeSource, Inc. v. AcademyOne, Inc.*, 653 F.3d 1066, 1080 (9th Cir. 2011) (internal quotation marks and citation omitted). As demonstrated at the November 10, 2015 hearing, Defendant can minimize costs by e-filing and appearing by phone. With regard to access to counsel, Defendant employs a regular attorney in New York, Amorphous Mot. Decl. ¶ 7, and "qualified for the service of the California Lawyers for the Arts but was not provided with an attorney with the appropriate qualifications given the short time frame." *Id.* ¶ 43. Thus, Defendant

---

[3] Though Defendant included six examples of alleged infringement of her Bored Panda photographs "by third parties unknown to [Defendant] using the Flipboard magazine creation service," Amorphous Reply Decl., ¶¶ 8, 9, Plaintiff contends that Defendant had no examples of third-party infringement of the works she posted on Flickr or Tumblr.

should be able to either redirect the financial resources she uses to hire her regular attorney in New York to find assistance here, or, with more time, she should be able to access an attorney through the California Lawyers for the Arts.

Given Defendant's high level of understanding of the TOU, and taking Plaintiff's contention that Defendant only joined Plaintiff's service to manufacture infringement for the purposes of litigation as true, the Court finds that enforcement of the forum selection clause here is neither unfair nor unreasonable. While the Court does not find that mere use of a website is sufficient to justify exercising personal jurisdiction over the user, the Court finds that, under the unique circumstances of this case, Defendant's consent to jurisdiction here is valid and binding.[4] *Cf. Zenger-Miller,* 757 F. Supp. at 1069; *Automattic Inc. v. Steiner,* 82 F. Supp. 3d 1011, 1022 (N.D. Cal. 2015).

### B. Specific Jurisdiction

Furthermore, Plaintiff contends that, even if Defendant had not consented to personal jurisdiction, the Court could still assert specific personal jurisdiction over Defendant "based on her purposeful availment of California's forum and conduct intentionally directed at this state." Opp. at 13. The Ninth Circuit has articulated a three-prong test to determine whether a defendant has sufficient "minimum contacts" with a forum to justify specific jurisdiction:

> (1) The non-resident defendant must purposefully direct his activities or consummate some transaction with the forum or resident thereof; or perform some act by which he purposefully avails himself of the privilege of conducting activities in the forum, thereby invoking the benefits and protections of its laws;
>
> (2) the claim must be one which arises out of or relates to the defendant's forum-related activities; and
>
> (3) the exercise of jurisdiction must comport with fair play and substantial justice, i.e., it must be reasonable.

*Yahoo!*, 433 F.3d at 1206. If Plaintiff satisfies the first two prongs of this test, the burden then shifts to Defendant to present a "compelling case" that the exercise of jurisdiction would be

---

[4] In light of this ruling, the Court need not reach Plaintiff's alternative argument regarding jurisdiction on the basis of Defendant's consent to Flickr's terms of service.

7

unreasonable. *CollegeSource.*, 653 F.3d at 1076 (citing *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 476–78 (1985)).

### i. Purposeful Direction

In tort cases, the Ninth Circuit "typically inquire[s] whether a defendant 'purposefully directs his activities' at the forum state, applying an 'effects' test that focuses on the forum in which the defendant's actions were felt, whether or not the actions themselves occurred within the forum." *Yahoo!*, 433 F.3d at 1206 (citing *Calder v. Jones*, 465 U.S. 783, 789-90 (1984)). The Ninth Circuit construes *Calder* "to impose three requirements: the defendant allegedly [must] have (1) committed an intentional act, (2) expressly aimed at the forum state, (3) causing harm that the defendant knows is likely to be suffered in the forum state." *Id.*

Plaintiff asserts that Defendant had two relevant sets of contact with California. First, a "barrage of demand letters to Plaintiff in California." Plaintiff correctly notes that a cease and desist letter alone is not sufficient to establish personal jurisdiction over Defendant. *See id.* at 1208. Instead, Plaintiff contends that the letter suffices when combined with Defendant's second form of contact with California: her alleged attempts to disrupt the business relationships of Plaintiff, which she knew is located in California. Opp. at 14-15. Plaintiff contends that Defendant reached out to several of its online business partners to allege that Plaintiff was stealing their content and violating their terms. *Id.* at 15. Plaintiff argues that Defendant took these actions "to coerce [Plaintiff] into accepting her demands" and knew "full well that the disruption she was seeking to cause . . . would be felt by [Plaintiff] in California, where it is based." *Id.* at 15.

To support its argument that these contacts suffice to establish purposeful direction, Plaintiff relies on two Ninth Circuit cases: *Yahoo! Inc. v. La Ligue Contre Le Racisme Et L'Antisemitisme*, 433 F.3d 1199 (9th Cir. 2006) and *Bancroft & Masters, Inc. v. Augusta Nat. Inc.*, 223 F.3d 1082 (9th Cir. 2000). Both cases hold that a district court can exercise jurisdiction over a defendant on the basis of a cease and desist letter when combined with additional forum-related contact.

In *Yahoo!*, the plaintiff, an American Internet service provider, sued two French defendants who had had three contacts with California, the forum state: first, a cease and desist

1   letter, 433 F.3d at 1208; second, service of process on the plaintiff for lawsuits commenced in
2   France, *id*. at 1209; and, third, two interim court orders from the French court directing the
3   plaintiff to take action in California, *id.* Unlike Plaintiff here, the *Yahoo!* plaintiff did not contend
4   that the defendants' allegations were untrue or ill-intentioned; rather, the plaintiff worried that
5   full compliance with the interim orders was technologically impossible and so filed an action
6   seeking declaratory judgment that the interim orders were not recognizable or enforceable in the
7   United States. *Id.* at 1205. The court held that "the first two contacts, taken by themselves, do not
8   provide sufficient basis for jurisdiction" but that the combination of the three contacts does. *Id.* at
9   1208.

10  In *Bancroft,* the plaintiff, a California corporation, alleged that the defendant engaged in
11  two sets of contacts with California. First, as here, it sent a cease and desist letter, 223 F.3d at
12  1085, and, second, it sent a letter to Network Solutions, Inc. ("NSI"), the then-sole register of
13  domain names in the United States, challenging the plaintiff's use of a domain name. *Id.* The
14  second letter triggered NSI's dispute resolution policy, which gave the plaintiff three options:
15  hand over the domain name to the defendant, allow the defendant to use the domain name
16  without fully surrendering it, or obtain a declaratory judgment establishing its right to use the
17  domain name. *Id.* The plaintiff chose the third option and filed suit.

18  Like Defendant here, the *Bancroft* defendant contended that its actions "aimed only at
19  protecting its intellectual property rights." *Id.* at 1087; *see* Reply at 6 ("Defendant never
20  threatened to sue Tumblr or Flickr, she simply asked these services a question"). But, like
21  Plaintiff here, the *Bancroft* plaintiff alleged that the defendant was deliberately interfering with
22  the plaintiff's business. 223 F.3d at 1087. Because the court was engaging in jurisdictional
23  analysis, it adopted plaintiff's version of the events, *id.*, and concluded that plaintiff had satisfied
24  the *Calder* effects test, *id.* at 1088. The court found that sending the second letter was
25  intentional; that it was expressly aimed at California because it individually targeted the plaintiff,
26  a California corporation; and that the effects were "primarily felt, as [defendant] knew they
27  would be, in California." *Id.*

28  The Court finds *Bancroft* instructive: as in *Bancroft*, Plaintiff alleges that Defendant

9

individually targeted it, a California corporation, by intentionally misrepresenting its intellectual property practices to third parties. The Court finds that the Defendant's alleged outreach to Flickr and Tumblr specifically targeted Plaintiff, which she knew to be a corporation with its principal place of business in California,[5] thereby satisfying the first two prongs of the *Calder* effects test.

The third prong of the *Calder* effects test requires a plaintiff to show that "a jurisdictionally sufficient amount of harm is suffered in the forum state." *Yahoo!*, 433 F.3d at 1210. Defendant argues that Plaintiff has failed to identify any actual harm from her actions. Reply at 9. However, Plaintiff contends that Defendant's outreach has disrupted its business in California. Following Defendant's communications, "Flickr reached out to [Plaintiff] on July 13, 2015," Willen Decl. ¶12, causing Plaintiff to expend time and resources to deal with potential reputational harm, including, in part, the filing of this lawsuit. *Id.* ¶ 13. Given that Plaintiff felt the need to expend resources on litigation to "remove the cloud of uncertainty created by Defendant's demands and threats," Compl. ¶ 23, the Court finds that the final element of the *Calder* effects test is satisfied. *See Automattic Inc.*, 82 F. Supp. 3d at 1024 (finding allegations that the plaintiff "spent substantial time and resources in dealing with the 'meritless' takedown notices and suffered reputational harm" sufficient for the third *Calder* prong).

### ii. Claim Arises Out of Forum-Related Contacts

The Court must next consider whether Plaintiff's claim arises out of Defendant's alleged forum-related contacts. *Bancroft*, 223 F. 3d at 1088. The Ninth Circuit measures this "in terms of 'but for' causation." *Id*. The requirement is met here: but for Defendant's demand letters and alleged interference with Plaintiff's business relationships, Plaintiff would not have felt the need to file this declaratory action. Opp. at 19; *see also Bancroft*, 223 F. 3d at 1088.

### iii. Reasonableness

Finally, the Court must determine whether exercising specific jurisdiction in this case

---

[5] Defendant argues that she believed that she was corresponding with Flickr and Tumblr in New York. Amorphous Reply Decl. ¶ 24. However, as *Bancroft* explains, the relevant inquiry is not where a defendant believes the communication is happening but, rather, where she believes the effect of that communication will occur. A letter—or phone call or email—sent to an entity in another state can nevertheless be "expressly aimed at California because it individually target[s] . . . a California corporation." 223 F. 3d at 1088.

10

would be reasonable or, in other words, "comport with fair play and substantial justice." *Id.* (citing *Burger King*, 471 U.S. at 476). The reasonableness inquiry considers seven factors: (1) the extent of the defendant's purposeful interjection into the forum state, (2) the burden on the defendant in defending in the forum, (3) the extent of the conflict with the sovereignty of the defendant's state, (4) the forum state's interest in adjudicating the dispute, (5) the most efficient judicial resolution of the controversy, (6) the importance of the forum to the plaintiff's interest in convenient and effective relief, and (7) the existence of an alternative forum. *Id.* Defendant bears the burden of demonstrating unreasonableness via a "compelling case." *Id.* Defendant addresses each of these factors in her papers. Mot. at 11-13; Reply at 8-14.

The Court has already considered versions of the first two factors above, finding that Defendant purposefully interjected herself into California's affairs by specifically and knowingly targeting Plaintiff, a California corporation, and that the burden on Defendant in litigating in California is not so great as to deprive her of her day in court.

With regard to the third factor—conflict with the sovereignty of the defendant's state—Defendant argues that "New York is the center of the international art world and many of Plaintiff and Defendant's clients are present in New York." Mot. at 12. Setting aside the question of whether "defendant's state" here is Rhode Island or New York, Defendant's argument does not identify potential conflict with either state's sovereignty. This case arises out of federal law and involves interpretation of TOU governed by California law. Thus, exercising jurisdiction in this case should not conflict with the sovereignty of Rhode Island, where Defendant resides, or New York, where Defendant has filed suit. *Craigslist, Inc. v. Mesiab,* C 08-05064 (MEJ), 2009 U.S. Dist. LEXIS 132433 at *24 (N.D. Cal. Sept. 14, 2009), *report and recommendation adopted,* 2009 U.S. Dist. LEXIS 132434 (N.D. Cal. Oct. 19, 2009).

Fourth, Defendant argues that California has no interest in adjudicating this dispute because Defendant is a nonresident and Plaintiff is incorporated in Delaware with an office in New York. Mot. at 12. As discussed at length above, however, Plaintiff's principal place of business is in California. The Court therefore has an interest in adjudicating this dispute to protect Plaintiff, a California corporation, from the allegedly wrongful acts of a nonresident. *Mesiab*, 2009 U.S.

11

Dist. LEXIS 132433 at *24.

For the fifth factor, Defendant argues that none of the records, files, or witnesses favorable to her are located in California but does not identify any such evidence or witnesses. Plaintiff, on the other hand, asserts that virtually all relevant records and systems, as well as all key Plaintiff witnesses, are located or managed in Palo Alto and provides specifics. Tobin Decl. ¶¶ 5, 7-11; Willen Decl. ¶ 18.

With regard to the sixth and seventh factors, Defendant argues that New York presents an alternative forum that would provide Plaintiff with convenient and effective relief. However, Defendant has not shown that New York is a preferable forum. Having weighed the seven factors, the Court finds that asserting jurisdiction over Defendant is reasonable.

Accordingly, the Court DENIES Defendant's motion to dismiss. The Court further DIRECTS Defendant to notify the New York court of this decision.

**IT IS SO ORDERED.**

Dated: December 10, 2015

BETH LABSON FREEMAN
United States District Judge

12