KALLIOPE AMORPHOUS
P.O. Box 603045
Providence, RI 02906
Telephone: 646-351-0867
Email Address: info@kalliopeamorphous.com
*Pro Se*

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN JOSE DIVISION

| | |
|---|---|
| FLIPBOARD, INC., a Delaware corporation,<br><br>Plaintiff,<br><br>vs.<br><br>KALLIOPE AMORPHOUS a.k.a MICHELLE WALSH, an individual.<br><br>Defendant. | CASE NO. 15-cv-03255<br><br>**NOTICE OF MOTION AND MOTION FOR LEAVE TO FILE MOTION FOR RECONSIDERATION BY DEFENDANT KALLIOPE AMORPHOUS**<br><br>Hon. Beth Labson Freeman |

**NOTICE OF MOTION AND MOTION FOR LEAVE TO FILE MOTION FOR**

**RECONSIDERATION**

PLEASE TAKE NOTICE that pursuant to Northern District of California Civil Local Rule 7-9(b)(3), Defendant Kalliope Amorphous hereby moves this Court for an order granting her leave to file a motion for reconsideration of this Court's December 10, 2015 Order Denying Defendant's Motion To Dismiss ("Order"). As required by Civil Local Rule 7-9, Defendant Amorphous respectfully contends, as discussed more fully below, that the Order

1

is "[a] manifest failure by the Court to consider material facts or dispositive legal arguments which were presented to the Court before such interlocutory order."

## MEMORANDUM OF POINTS AND AUTHORITIES

### INTRODUCTION

Under Northern District Civil Local Rule 7-9, a party may seek leave to file a motion for reconsideration any time before judgment. N.D. Civ. L.R. 7-9(a). A motion for reconsideration may be made on one of three grounds: (1) a material difference in fact or law exists from that which was presented to the Court, which, in the exercise of reasonable diligence, the party applying for reconsideration did not know at the time of the order; (2) the emergence of new material facts or a change of law; or (3) a manifest failure by the Court to consider material facts or dispositive legal arguments presented before entry of judgment. N.D. Civ. L.R. 7-9(b)(1)-(3). The moving party may not reargue any written or oral argument previously asserted to the Court. *Id.* at 7-9(c); *see also Hopkins v. Bonvicino*, 2011 WL 995961, *1 (N.D. Cal. Mar. 21, 2011) (White, J.) (unpublished); *School Dist. No. 1J, Multnomah County, Or. v. ACandS, Inc.*, 5 F.3d 1255, 1263 (9th Cir. 1993) ("Reconsideration is appropriate if the district court is (1) presented with newly discovered evidence, (2) committed clear error or the initial decision was manifestly unjust, or (3) if there is an intervening change in controlling law.").

Defendant Kalliope Amorphous seeks leave to move for reconsideration of the Order on the grounds that the initial decision was manifestly unjust and failed to consider material facts or dispositive legal arguments presented before entry of judgment as follows:

NO MINIMUM CONTACTS ESTABLISHED

In *Walden v. Fiore*, 134 S. Ct. 1115, 188 L.Ed. 2d 12, (2014) the Court addressed the "minimum contacts" necessary to give a State specific personal jurisdiction over an alleged intentional tortfeasor. The Supreme Court clarified that the effect on the in-forum plaintiff is not a sufficient contact to support the exercise of specific personal jurisdiction by that forum. The Court emphasized that the existence of "minimum contacts" turns on an assessment of the defendant's contacts with the forum that the defendant created, not on the defendant's contacts with forum residents.

A client alert sent out by the prestigious firm Paul Hastings LLP, states that the Supreme Court continues to curtail plaintiffs' freedom to select the forum of litigation. "On the heels of its decision last month in *Daimler AG v. Bauman* restricting general personal jurisdiction, the Court's decision last week in *Walden v. Fiore*, No. 12-574, clarifies the constitutional limits of specific jurisdiction." *Minimum Contacts" Inquiry Cannot Be Minimal: U.S. Supreme Court Rejects Broad Reading of the Effects Test for Personal Jurisdiction*, by Stephen B. Kinnaird, Charles A. Patrizia, Igor V. Timofeyev, Sean D. Unger and Danielle C. Doremus. (March, 2014). In both contexts, the Court confirmed that even in our increasingly mobile world, plaintiffs cannot presume that the court they choose will have jurisdiction over the defendant. In *Walden,* the Court held that specific jurisdiction turns on the defendant's contacts with the forum, not the defendant's relationship with forum residents. *Walden* makes clear there is no presumption of jurisdiction where a defendant knows that a plaintiff lives in a particular state. In addition, *Walden* rejects the theory previously embraced by some courts that specific jurisdiction is proper in intentional tort cases wherever a plaintiff suffers any form of foreseeable harm. Although the

MOTION FOR LEAVE FOR FILING MOTION FOR RECONSIDERATION

Court's opinion focused on an individual, not a corporation, and the Court pointedly declined to consider the impact of a defendant's virtual "presence" within the state by e-commerce, *Walden* has important favorable implications for online and out-of-state businesses alike. By further narrowing the bases for personal jurisdiction, *Walden* encourages courts to err on the side of dismissal when faced with a defendant's inadvertent or tenuous connection to the forum state. Flipboard has not alleged any intentional tort committed by Ms. Amorphous, although the Court treats Flipboard's action as if it was slander of title or tortious interference with business relations. The Court overlooked Ms. Amorphous' discussion of the *Walden* case (Amorphous Memorandum 8) and that Flipboard's attorney's specifically state they will not be alleging this claim. (*See* Amorphous Decl. Ex. A at 41). Moreover Flipboard has provided no evidence that any harm was suffered by it as a result of Ms. Amorphous' contact with services to which she is an account holder and with which Flipboard claims to have business relationships. No evidence of these business relationships exist, and further, all three services have denied in writing granting licenses to Flipboard. Even more importantly, there is no evidence of who from Flickr contacted Flipboard or why, if the facts were as stated by Flipboard, it needed to file a declaratory judgment action against Amorphous. In fact, the Court overlooked the transcript of the oral arguments submitted by Ms. Amorphous. The transcript indicated that Flipboard's counsel stated they were unintimidated by her actions as Ms. Amorphous contacted a "low-level" employee who could not affect their business practices or relationships.

> MR. KRAMER: So what counsel is referring to is communications that, apparently, her client, or perhaps she, had with customer service representatives, who are not in a position to know about the arrangements between Flickr and Flipboard or Tumblr and Flipboard. She wrote in to those services and said, hey, my stuff is appearing on Flipboard; is that right? How can that happen? And a customer service representative, a relatively low-level

MOTION FOR LEAVE FOR FILING MOTION FOR RECONSIDERATION

      functionary at those services who receives probably hundreds of those messages a day about everything under the sun, simply is unaware of the API agreements that Flickr and Tumblr have with Flipboard. That's the answer. (*See* Amorphous Decl. Ex. A p. 18).

NO CONSENT GIVEN

      The Court's analysis of Ms. Amorphous' alleged consent to jurisdiction overlooks the facts of the "Catch 22" argument. (Order at 5). First, the Court properly accepted the Plaintiff's facts as true in order to rule on the Motion to Dismiss. This led the Court to accept the argument that Ms. Amorphous agreed to Flipboard's TOS in order to manufacture infringements and therefore she was subject to the jurisdiction clause of the TOS. The Court states that the Catch 22 is: "[Ms. Amorphous] could either have proof of Plaintiff's infringement but be subject to suit in California, or she could reject the forum selection clause but deprive herself of the proof she needed to bring the New York Case." *Id.* This is neither stated in Ms. Amorphous' Reply Memorandum, nor is it true. Ms. Amorphous joined Flipboard only *after* she found her works were being used by the Flipboard Photo Desk in New York. (Amorphous Reply Memorandum 18). Therefore, the Court's understanding of the supposed "Catch 22" overlooks that the only time Ms. Amorphous states that using the Flipboard service was "necessary" was "to document the purposes for which Flipboard distributed her photographs." This statement does not give rise to the fact that Ms. Amorphous would be unable to prove infringement by Flipboard in the New York Case, it instead reveals Ms. Amorphous' due diligence in understanding and documenting how the Flipboard service allows users to repurpose her work for their own use. In this regard, the Court taking Flipboard's statement at face value that Ms. Amorphous manufactured infringement, erroneously concludes as a matter of law, that Flipboard's admitted actions did not violate Ms. Amorphous' copyright in New York and Rhode Island, and overlooks that the basis of Ms.

Amorphous' copyright infringement claim arose before she joined the Flipboard service. Her claim against Flipboard does not arise out of the contract or TOS of Flipboard, but from Flipboard accessing work she uploaded from Rhode Island to third parties not involved in this lawsuit. Furthermore, as neither action has proceeded with discovery, the list of Flipboard users who used Ms. Amorphous' photographs remains confidential, which further incentivized Ms. Amorphous to find the ways in which her work could be used through the Flipboard site. Furthermore, the Court's use of *Zenger-Miller, Inc. v. Training Team, GmbH*, 757 F. Supp. 1062 (N.D. Cal. 1991) as the basis for a "special circumstance" to consent to jurisdiction, overlooks that *Zenger-Miller* relies on a contract negotiated at arms length, not a TOS agreed to in order to document, or even manufacture, ways in which Flipboard uses and allows its users to produce Ms. Amorphous' work.

  The Court's analysis of consent as the basis for personal jurisdiction overlooks that agreeing to Flipboard's TOS is the only TOS that could possibly form the basis for jurisdiction. As discussed above, the Court overlooks Ms. Amorphous' discussion of *Walden*: "Plaintiff has not shown that Defendant has purposefully directed any activities toward California with regard to the conduct at issue in this lawsuit." (*Id.* at 1123) (Amorphous Reply Memorandum 15). Consent to the Bored Panda, Flickr, or Tumblr's TOS, which Ms. Amorphous did long before Flipboard's use of her artwork, is irrelevant to jurisdiction in this action, as Ms. Amorphous is not bringing any claims against Bored Panda, Flickr, or Tumblr for the ways in which their TOS were being allegedly violated. The fact that Ms. Amorphous agreed to the TOS of Bored Panda, Flickr, and Tumblr is not in dispute, let alone an issue to be remarked upon in this case. In this respect, the Court ignores that in this day and age, most people have likely signed the TOS of

many different companies. To assume that the TOS of one company gives personal jurisdiction to the state, over the person who signed it, for any matter not arising out of that specific contract would destroy the notion of substantial justice and fair play by destroying the constitutional right to proper personal jurisdiction.

NO PURPOSEFUL DIRECTION

Purposeful direction is analyzed under the "effects test" announced in the United States Supreme Court's decision in Calder. Calder stands for the proposition that purposeful availment is satisfied even by a defendant whose only contact with the forum state is the purposeful direction of a foreign act having effect in the forum state. The three-part "effects test" requires that the defendant allegedly have (1) committed an intentional act, (2) expressly aimed at the forum state, (3) causing harm that the defendant knows is likely to be suffered in the forum state.

In the present case, Ms. Amorphous did not purposely direct any activity whatsoever to the state of California. Flipboard first infringed her works out of their New York office and she believed she was contacting the offices of Bored Panda, Flickr and Tumblr in New York. Similarly, her attorney reasonably believed and was lead to believe that Flipboard's attorney was in New York, as all of her correspondence was with Flipboard's New York attorney, Brian Willen. (Order 2).

NO ALLEGATIONS OF TRADE DISPARAGEMENT

California law recognizes two distinct trade disparagement torts: slander of title and trade libel. 5 B.E. Witkin, Summary of California Law (Torts) § 567. False accusations of copyright are usually pleaded as slander of title claims. See Restatement (Second) of Torts § 624 cmt. c.

The term "trade libel" is both an independent tort and a synonym for "trade disparagement." Prosser & Keeton on Torts 963 (5th Lawyers ed. 1984). Statements that constitute threats of harm to the plaintiff are unprotected violations of Cal. Civ. Code§ 51.7(b); *McCalden v. California Library Ass'n*, 955 F.2d 1214, 1221-22 (9th Cir. 1990), cert. denied, 112 S. Ct. 2306, 119 L.Ed.2d 227 (1992). The Court overlooked the fact that Flipboard has not alleged trade disparagement in its complaint, and has even stated that counsel considered and rejected filing a claim for tortious interference with business relationships:

> MR. KRAMER: …But beyond that, your Honor, yes, I hesitate to get into this, but there was consideration on our part to bringing affirmative claims for tortious interference in light of the misrepresentations that Ms. Amorphous was making to these parties about the manner in which Flipboard operated. We decided against that. We decided that we were simply going to seek a declaration that the complaint -- that the copyright claims that Ms. Amorphous was leveling were without merit, but there was consideration about that as well. (*See* Amorphous Decl. Ex. A at 41).

Thus, to subject Ms. Amorphous to jurisdiction based on the finding that her statements to third parties she believed to be in New York, constituted threats of harm to the plaintiff in California so as to justify personal jurisdiction over Ms. Amorphous based on harm from an intentional tort is not only counterintuitive but is unjust and raises constitutional issues.

NO PURPOSEFUL AVAILMENT OR "ARISING OUT OF"

The Ninth Circuit has held that the first prong of the specific jurisdiction test "may be satisfied by purposeful availment of the privilege of doing business in the forum; by purposeful direction of activities at the forum; or by some combination thereof." *Yahoo! Inc. v. La Ligue Contre Le Racisme Et L'Antisemitisme*, 433 F.3d 1199, 1206 (9th Cir. 2006) (per curiam) (applying this hybrid purposeful availment/direction test to a plaintiff's claims for declaratory

judgment regarding the enforceability of orders issued by a French court). Under either of these tests, Flipboard must also show that their suit arises out of the defendant's contacts in the forum state and the claim at issue—a declaration of copyright non-infringement. *See Terracom v. Valley Nat. Bank*, 49 F.3d 555, 560-61 (9th Cir. 1995) (holding that "purposeful availment prong prevents defendants from being haled into a jurisdiction through 'random,' 'fortuitous,' or 'attenuated' contacts"); *Bancroft & Masters, Inc. v. Augusta Nat. Inc.*, 223 F.3d 1082, 1088 (9th Cir. 2000) (explaining that the contacts constituting purposeful availment must be the ones that give rise to the current suit.). This "arising out of" requirement is met if, but for the contacts between the defendant and the forum state, the cause of action would not have arisen. *See Omeluk*, 52 F.3d at 271. Clearly, Flipboard's claim for a declaratory judgment does not arise out of Ms. Amorphous' TOS with Flipboard or with any injury to Flipboard's business since Flipboard's claim is based on contracts with third parties Bored Panda, Flickr and Tumblr.

Although, admittedly, the Supreme Court's opinion in *Walden* stops well short of overturning the *Bancroft* line of cases, until a higher court overrules it, *Bancroft* is still the law of this Circuit and binds this Court. *Walden* is more analogous. Even if this Court applied *Bancroft*, seen through the lens of *Walden*, *Bancroft* is distinguishable. Ms. Amorphous could not have caused harm to Flipboard's business in California, because viewing the facts in the light most favorable to Flipboard, Flickr, Tumblr and Bored Panda had contracts with and had licensed Flipboard's use of Amorphous' photos.

In contrast, courts evaluate purposeful direction using the *Calder* "effects test." *See Brayton Purcell LLP v. Recordon & Recordon*, 606 F.3d 1124, 1128 (9th Cir. 2010) (explaining that the *Calder* effect test is appropriate for torts such as copyright infringement). Under the

1  "effects test," the defendant must allegedly have: "(1) committed an intentional act, (2) expressly aimed at the forum state, (3) causing harm that the defendant knows is likely to be suffered in the forum state." *Dole Food Co., Inc. v. Watts*, 303 F.3d 1104, 1111 (9th Cir. 2002). All three elements of the test must be satisfied. *Schwarzenegger v. Fred Martin Motor Co.*, 374 F.3d 797, 805 (9th Cir. 2004). "A finding of 'express aiming' . . . does not mean 'that a foreign act with foreseeable effects in the forum states always gives rise to specific jurisdiction.'" *Dole*, 303 F.3d at 1112 (quoting *Bancroft*, 223 F.3d at 1087). Under the causing harm requirement, the Ninth Circuit has made it clear that any intentional conduct must be "targeted at a plaintiff whom the defendant knows to be a resident of the forum state." *Bancroft*, 223 F.3d at 1087. This is not the case here as at all times Ms. Amorphous and her attorney believed that all communications with Flipboard and Flipboard's attorney was in New York.

It is well settled law that "a cease and desist letter is not in and of itself sufficient to establish personal jurisdiction over the sender of the letter." *Yahoo*, 433 F.3d at 1208 (noting that cease and desist letters are used to warn an alleged rights infringer that continued behavior may result in legal proceedings); *Red Wing Shoe Co. v. Hockerson-Halberstadt, Inc.*, 148 F.3d 1355, 1361 (Fed. Cir. 1998) ("A [right owner] should not subject itself to personal jurisdiction in a forum solely by informing a party who happens to be located there of suspected infringement."); *see also Cascade Corp. v. Hiab-Foco AB*, 619 F.2d 36, 38 (9th Cir. 1980); *Kransco Mfg., Inc. v. Markwitz*, 656 F.2d 1376, 1380 (9th Cir. 1981); *Douglas Furniture Co. of Cal., Inc. v. Wood Dimensions, Inc.*, 963 F. Supp. 899, 903 (C.D. Cal. 1997).

In both *Yahoo* and *Bancroft,* the Ninth Circuit found specific personal jurisdiction to exist over defendants who sent cease and desist letters into a forum state because, beyond sending the

letters, they had other forum related activities that gave rise to the plaintiffs' claims. *See Yahoo*, 433 F.3d at 1208; *Bancroft*, 223 F.3d at 1087. In *Yahoo*, the defendant had obtained orders from French courts directing the plaintiff to perform actions in the forum state, which gave rise to the plaintiff's claims in the forum state. *Id* at 1208. In *Bancroft*, the defendant sent a cease and desist letter both to the plaintiff and to a third-party corporation, which had competing claims to an Internet domain name, with the intent of triggering the dispute resolution procedures of the third-party corporation. *Id.* at 1087. The court in *Bancroft* found that this triggering of the dispute resolution procedures gave rise to the plaintiff's suit and held that it constituted purposeful direction. *Id*. In the present case, as noted above, Ms. Amorphous has directed no activity at California that gave rise to Flipboard's claims beyond sending one take down notice, not a "barrage of", letters to Flipboard and did not invoke or threaten to invoke the legal system in California. The Court while stating that all correspondence was with Flipboard's New York lawyer, erroneously overlooks this fact in that observation. The Court further overlooks that Ms. Amorphous threat of brining a lawsuit, which resulted in this anticipatory filing was threats by her counsel to Flipboard's counsel located in New York.

     Second, the Court in *Walden* cautioned that "'minimum contacts' analysis looks to the defendant's contacts with the forum State itself, not the defendant's contacts with persons who reside there." 134 S. Ct. at 1122. The Court acknowledged that "a defendant's contacts with the forum state may be intertwined with his transactions or interactions with the plaintiff or other parties" but emphasized that "a defendant's relationship with a plaintiff or third party, standing alone, is an insufficient basis for jurisdiction." *Id*. at 1123. Rather, "[d]ue process requires that a defendant be hailed into court in a forum State based on his own affiliation with the State, not

1  based on the 'random, fortuitous, or attenuated' contacts he makes by interacting with other
2  persons affiliated with the State." *Id*. (quoting *Burger King*, 471 U.S. at 472). Ms. Amorphous
3  has no affiliation with California; she does not reside there, does no business there, has never
4  traveled there, and has made no income there.
5       In summary, the Court overlooked Ms. Amorphous' analysis of *Walden*, in her Motion to
6  Dismiss (*See* Amorphous Memorandum 8) which distinguishes the, *Yahoo!* and the *Bancroft*
7  cases. These two cases deal with Defendant's whose cease and desist letters were combined with
8  taking judicial and extra-judicial actions through third parties that only left Plaintiff with two
9  options: (1) lose business; or (2) defend its business by resorting to the Courts. This is not the
10 case here. Instead, Flipboard seeks to crush Ms. Amorphous, who merely sent a single cease and
11 desist letter and a single take down notice. The threat to sue would just as easily have been
12 disposed of if Ms. Amorphous had brought her copyright infringement suit first, if Flipboard's
13 statements are true—that they have the licenses required to make their use of Ms. Amorphous'
14 work. This Court makes conclusions of law where it finds that Ms. Amorphous' inquiries to
15 Flickr and Tumblr were intentional misrepresentations. Furthermore, that statement overlooks
16 the fact Ms. Amorphous reached out to these companies to ask how Flipboard was obtaining
17 access to her images, not to "intentionally misrepresent" Flipboard's business practices. In fact,
18 once again, if Flipboard's statements are true, that the proper licenses exist to allow for their use
19 of Ms. Amorphous' work, then Ms. Amorphous' representations to "low-level" customer service
20 representatives would be met with executive disregard, as both companies would be aware of the
21 alleged licenses allowing for the use of available work. It is respectfully submitted that the Court

overlooked these factors and the evidence provided in support by Ms. Amorphous (*See* Amorphous Declaration Exhibit A, Amorphous Memorandum).

DAMAGES FROM TORTIOUS INTERFERENCE WITH BUSINESS RELATIONS

Defendant claims that Plaintiff fails to allege a factual basis for money damages, a necessary element in a claim of tortious interference under California law. In causes of action for tortious interference with business relations in California, damages must be plead. *Quelimane*, 19 Cal. 4th at 56.

## CONCLUSION

For the foregoing reasons, Defendant Amorphous requests permission from this Court to file her motion for reconsideration.

Respectfully Submitted,

Kalliope Amorphous

\_\_\_/s/\_\_\_\_

Defendant, Pro Se

MOTION FOR LEAVE FOR FILING MOTION FOR RECONSIDERATION